UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

BRENDA WIMBERLY                           CIVIL ACTION NO. 6:12-cv-01793

VERSUS                                    JUDGE HAIK

MICHAEL J. ASTRUE,                        MAGISTRATE JUDGE HANNA
COMMISSIONER OF
SOCIAL SECURITY

## REPORT  AND  RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be reversed and remanded.

### BACKGROUND

Brenda Wimberly, the claimant in this matter, applied for Social Security

disability insurance benefits[1] and for supplemental security income[2] on January 25,

2010, alleging a disability onset date of November 23, 2009.  In a contemporaneous

disability report, she claimed that she is unable to work because of the following

conditions:  back injury, depression, arthritis, neuropathy, high blood pressure,

insomnia, and anxiety.[3]  On April 15, 2010, the Commissioner initially denied Ms.

---

[1]     Rec. Doc. 7-1 at 108.

[2]     Rec. Doc. 7-1 at 112.

[3]     Rec. Doc. 7-1 at 153.

Wimberly's claim.[4]  Ms. Wimberly requested a hearing,[5] which was held on January

19, 2011 before Administrative Law Judge ("ALJ") Thomas W. Bundy.[6]  On March

15, 2011, the ALJ issued an unfavorable decision.[7]  Ms. Wimberly requested review

by the Appeals Council,[8] and the Appeals Council denied Ms. Wimberly's request for

review of the ALJ's decision.[9]  Therefore, the ALJ's decision is the Commissioner's

final decision.  On June 28, 2012, Ms. Wimberly instituted this lawsuit, seeking

judicial review of the Commissioner's adverse ruling.[10]

Ms. Wimberly was born on August 22, 1949,[11] and her 64th birthday is fast

approaching.  On the alleged date of disability onset, she was 60 years old.  She

obtained her GED in 1988[12] then trained to become a licensed practical nurse.[13]  With

the exception of 2001 and 2002, she steadily worked as a nurse from 1990 until

---

[4]    Rec. Doc. 7-1 at 61.

[5]    Rec. Doc. 7-1 at 67.

[6]    Rec. Doc. 7-1 at 41-57 (hearing transcript).

[7]    Rec. Doc. 7-1 at 27-36.

[8]    Rec. Doc. 7-1 at 17.

[9]    Rec. Doc. 7-1 at 5.

[10]   Rec. Doc. 1.

[11]   Rec. Doc. 7-1 at 108, 112.

[12]   Rec. Doc. 7-1 at 154.

[13]   Rec. Doc. 7-1 at 154.

November 23, 2009,[14] when she was fired because she was no longer able to perform her duties.[15]  From 2004 to 2007, she held two jobs.[16]  Ms. Wimberly did not work in 2001 and 2002 because of the back injury that precipitated her current medical condition.

Ms. Wimberly injured her back on the job while working for Allied Home Health in December 2000.[17]  She was treated conservatively for several months then underwent lumbar micro-diskectomy surgery at L5-S1 on the left in October 2001. Although she had significant improvement with regard to her left leg pain, she remained symptomatic, primarily with low back pain and some residual left leg pain. She was referred to Dr. Steven K. Staires, a pain medicine specialist, in August 2002, and she has treated with Dr. Staires since that date.[18]  She currently sees Dr. Staires every three months.[19]

Dr. Staires has diagnosed Ms. Wimberly with failed back surgery syndrome, multilevel lumbar spondylosis, lumbar degenerative disease, lumbar radiculitis,

---

[14]     Rec. Doc. 7-1 at 140-148.

[15]     Rec. Doc. 7-1 at 44.

[16]     Rec. Doc. 7-1 at 52.

[17]     Rec. Doc. 7-1 at 265.

[18]     Rec. Doc. 7-1 at 265.

[19]     Rec. Doc. 7-1 at 266.

degenerative joint disease of bilateral hips and bilateral knees, as well as psychological conditions including anxiety and depression.[20]

The record contains Dr. Staires's treatment notes from November 4, 2008 through December 22, 2010. On November 4, 2008, she received lumbar facet joint injections at L4-5 and L5-S1 on the left side.[21] Additionally, her knees and hips were x-rayed, revealing mild degenerative changes of osteoarthritis at both hip joints and early osteoarthritis of both knee joints.[22] On December 16, 2008, Ms. Wimberly received transforaminal epidural steroid injections at L5 and S1 on the left side.[23] She followed up with Dr. Staires on January 11, 2010,[24] March 31, 2010,[25] June 30, 2010,[26] July 13, 2010,[27] September 29, 2010,[28] November 9, 2010,[29] and December

---

[20]     Rec. Doc. 7-1 at 265.

[21]     Rec. Doc. 7-1 at 213.

[22]     Rec. Doc. 7-1 at 209, 210.

[23]     Rec. Doc. 7-1 at 212.

[24]     Rec. Doc. 7-1 at 257-262.

[25]     Rec. Doc. 7-1 at 253-256.

[26]     Rec. Doc. 7-1 at 277-281.

[27]     Rec. Doc. 7-1 at 283-284.

[28]     Rec. Doc. 7-1 at 272-276.

[29]     Rec. Doc. 7-1 at 282.

22, 2010.[30]   At all of these appointments she reported continued pain even with medication.   She also complained of frequent falls, left leg pain and weakness, difficulty concentrating, and difficulty making decisions.

In December 2010, Dr. Staires was prescribing Ambien for insomnia, BuSpar for anxiety, Celexa for depression, MS Contin for pain management, Topamax for neuropathic pain, and Voltaren for topical treatment of joint pain.   Ms. Wimberly was also taking Ziac for high blood pressure, which was prescribed by Dr. Mike Williams.[31]

On March 20, 2010, Ms. Wimberly was examined by Dr. Rachel Kado for Louisiana DDS.[32]   Ms. Wimberly told Dr. Kado that her back pain is worsening, and that she has some relief of pain for about one hour with her medication.   She related her insomnia and depression to her back pain.   She also described neuropathy in her legs, which has been improved with medication and anxiety, which has also improved with medication.   Dr. Kado did not opine on Ms. Wimberly's ability to perform work-related activities.

---

[30]      Rec. Doc. 7-1 at 267-271.

[31]      Rec. Doc. 7-1 at 267.

[32]      Rec. Doc. 7-1 at 219-222.

On September 13, 2010, Ms. Wimberly was examined by Dr. Stephen M. Wilson for the purpose of an orthopedic disability evaluation.[33]  She told Dr. Wilson about the accident that injured her low back, reported continued pain following surgery, and discussed her post-surgical return to work.  She also reported frequent falls and radicular leg pain.  She explained that she has undergone epidural steroid injections without great benefit.  Dr. Wilson opined that Ms. Wimberly was embellishing her symptoms and taking too much pain medication.  He also opined that she could return to work lifting no more than 10 pounds regularly and with only minimal bending, stooping, crawling, or climbing.

On the same day, Dr. Wilson also filled out a medical source statement of ability to do work-related activities.[34]  He indicated that Ms. Wimberly is capable of sitting for four hours at a time, standing for two hours at a time, and walking for two hours at a time.  He indicated that, out of an eight-hour work day, Ms. Wimberly is capable of sitting for eight hours, standing for four hours, and walking for four hours.

On January 11, 2011, Ms. Wimberly's treating physician, Dr. Staires, prepared a detailed narrative report discussing Ms. Wimberly's condition and treatment.[35]  His

---

[33]     Rec. Doc. 7-1 at 246-247.

[34]     Rec. Doc. 7-1 at 240-245.

[35]     Rec. Doc. 7-1 at 265-266.

then-current diagnoses were:  failed back surgery syndrome, multilevel lumbar spondylosis, lumbar degenerative disease, lumbar radiculitis, degenerative joint disease of bilateral hips and bilateral knees, anxiety, and depression.  He explained that when he examined her in December 2010, she was continuing to report constant, stabbing, low back pain involving the left buttock and posterolateral aspects of both legs to the feet and including the feet.  She reported moderate anxiety and depression as well as severe difficulty concentrating.  She was tender in bilateral lumbar paraspinous muscles.  Her lumbar range of motion was restricted in all planes secondary to pain by approximately 50%.  Her straight leg raise was positive on the left at approximately 80 degrees with left leg pain, but negative on the right.  Reflexes were absent in bilateral lower extremities at the knees and ankles.  Dr. Staires explained that Ms. Wimberly does not tolerate prolonged sitting or standing.  He stated that she has a progressive arthritic and neurological condition that he does not expect to improve for the rest of her life.  He also stated that her ability to function cognitively is restricted due to the chronic pain and the side effects of her medication.

On January 17, 2011, Dr. Staires completed a multiple impairment questionnaire.[36]  He set forth his diagnoses, identified the laboratory and diagnostic tests supporting his diagnosis, and set forth his opinions concerning Ms. Wimberly's

---

[36]     Rec. Doc. 7-1 at 286-293.

functional capacity.  He indicated that Ms. Wimberly is capable of sitting only two hours out of an eight-hour work day, standing or walking only two hours out of an eight-hour work day, and must get up and move around hourly.  He also indicated that she frequently experiences symptoms severe enough to interfere with her attention and concentration.

On March 19, 2012, Dr. Staires again completed a multiple impairment questionnaire,[37] in which he indicated that Ms. Wimberly's condition and his opinions and recommendations had not substantially changed since January 17, 2011.  He again indicated that Ms. Wimberly is capable of sitting only two hours out of an eight-hour work day, standing or walking only two hours out of an eight-hour work day, and must get up and move around hourly for approximately ten to fifteen minutes each time.  He expressly stated that Ms. Wimberly cannot sit for prolonged periods of time.

In this lawsuit, Ms. Wimberly contests the Commissioner's finding that she is capable of performing a full range of light work.

### ASSIGNMENT OF ERRORS

Ms. Wimberly argues that the Commissioner erred in reaching his decision because (1) the ALJ failed to give her treating physician's opinions controlling

---

[37]      Rec. Doc. 7-1 at 295-302.

weight; (2) the ALJ failed to properly evaluate her credibility; and (3) the ALJ relied upon flawed testimony from the vocational expert.

<u>STANDARD OF REVIEW</u>

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[38]   If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[39]  Substantial evidence is more than a mere scintilla and less than a preponderance.[40]  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[41]   Finding substantial evidence requires scrutiny of the entire record as a whole.[42]  In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[43]

---

[38]      *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

[39]      *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[40]      *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[41]      *Boyd v. Apfel,* 239 F.3d at 704.

[42]      *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[43]      *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

A claimant seeking Social Security benefits bears the burden of proving that he or she is disabled.[44]  Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[45]  Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit.[46]

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1.    An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.    An individual who does not have a severe impairment will not be found disabled.

---

[44]    *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

[45]    42 U.S.C. § 423(d)(1)(A).

[46]    20 C.F.R. § 404.1572(a)-(b).

3.      An individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors.

4.      If an individual is capable of performing the work he has done in the past, a finding of not disabled must be made.

5.      If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if the claimant can perform any other work.[47]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[48] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the claimant's record.[49]  The claimant's residual functional capacity is used at the fourth

---

[47]      *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f).  See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[48]      20 C.F.R. § 404.1520(a)(4).

[49]      20 C.F.R. § 404.1545(a)(1).

step to determine if the claimant can still do his past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[50]

The claimant bears the burden of proof on the first four steps.[51]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[52]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[53]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[54]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[55]

## DISCUSSION

---

[50]     20 C.F.R. § 404.1520(e).

[51]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[52]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[53]     *Fraga v. Bowen*, 810 F.2d at 1304.

[54]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[55]     *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

-12-

In this case, the Commissioner found, at step one, that Ms. Wimberly has not engaged in substantial gainful activity since November 23, 2009.[56]  That finding is supported by evidence in the record.  At step two, the Commissioner found that Ms. Wimberly has two severe impairments:  disorders of the back and osteoarthritis of the knees.[57]  This finding is also supported by evidence in the record; however, the ALJ discounted the severity of Ms. Wimberly's mental impairments, relying solely upon a state agency consultant's review of the evidence and ignoring the opinions of her treating physician.   It also ignores Ms. Wimberly's complaints concerning osteoarthritis in her hips.  At step three, the ALJ found that Ms. Wimberly does not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments.[58]

The ALJ then found that Ms. Wimberly has the residual functional capacity to perform the full range of light work.[59]  At step four, the ALJ found that Ms. Wimberly is not capable of performing her past relevant work.[60]  At step five, the ALJ found

---

[56]     Rec. Doc. 7-1 at 29.

[57]     Rec. Doc. 7-1 at 29.

[58]     Rec. Doc. 7-1 at 31.

[59]     Rec. Doc. 7-1 at 31.

[60]     Rec. Doc. 7-1 at 34.

-13-

that there are jobs existing in significant numbers in the national economy that Ms. Wimberly can perform.[61]

Accordingly, the ALJ found that Ms. Wimberly was not disabled from November 23, 2009 through the date of the decision.[62]  Ms. Wimberly argues that the ALJ erred in three ways, each of which will be discussed below.

### (1)   THE ALJ FAILED TO GIVE THE TREATING PHYSICIAN'S OPINIONS CONTROLLING WEIGHT

Ms. Wimberly's first argument is that the ALJ failed to give Dr. Staires's medical opinions controlling weight.  The ALJ has sole responsibility for determining the claimant's disability status.[63]  Although a treating physician's opinions are not determinative of disability, the opinions of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight by the ALJ in determining disability.[64]  In fact, when a treating physician's opinion regarding the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

---

[61]   Rec. Doc. 7-1 at 35.

[62]   Rec. Doc. 7-1 at 36.

[63]   *Newton v. Apfel*, 209 F.3d at 455.

[64]   *Pineda v. Astrue*, 289 Fed. App'x 710, 712-713 (5th Cir. 2008), citing *Newton v. Apfel*, 209 F.3d at 455.

-14-

inconsistent with the other substantial evidence in the record, the ALJ must give that opinion controlling weight.[65]  If an ALJ declines to give controlling weight to a treating doctor's opinion, he may give the opinion little or no weight – but only after showing good cause for doing so.[66]  Good cause may be shown if the treating physician's opinion is conclusory, unsupported by medically acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence.[67] Before declining to give any weight to the opinions of a treating doctor, an ALJ must also consider the length of treatment by the physician, the frequency of his examination of the claimant, the nature and extent of the doctor-patient relationship, the support provided by other evidence, the consistency of the treating physician's opinion with the record, and the treating doctor's area of specialization, if any.[68]  In this case, the ALJ made no such evaluation.

The law is clear that "[t]he ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."[69]  The appropriate inquiry is "whether the record, read as a whole, yields such evidence as

---

[65]     20 C.F.R. § 404.1527(c)(2).  See, also, *Loza v. Apfel*, 219 F.3d at 393.

[66]     *Thibodeaux v. Astrue*, 324 Fed. App'x 440, 443-444 (5th Cir. 2009).

[67]     *Thibodeaux v. Astrue*, 324 Fed. App'x at 443-444.

[68]     *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *Newton v. Apfel*, 209 F.3d at 456.

[69]     *Loza v. Apfel*, 219 F.3d at 393.

would allow a reasonable mind to accept the conclusions reached by the ALJ."[70]  In this case, the undersigned finds that the ALJ erred in rejecting Dr. Staires's opinions.

Dr. Staires's reports are not conclusory, they are not unsupported by medically acceptable clinical laboratory diagnostic techniques, and they are not unsupported by the evidence in the record.   Furthermore, the ALJ did not state that he was discounting Dr. Staires's functional evaluations for any of those reasons.   To the contrary, Dr. Staires provided a detailed narrative report as well as two checklist-style functional reports.   In all three, he explained his diagnoses, how the diagnoses were reached, and correlated his diagnoses, opinions, and recommendations to his examinations of Ms. Wimberly over a ten-year time period.   The record also contains Dr. Staires's records from 2008 forward, which are consistent with his three reports.

Dr. Staires's functional evaluations were supported by substantive medical evidence in the record.   His opinions are based on his examination of Ms. Wimberly on numerous occasions over a long time span.   He has been treating her since 2002 and sees her every three months.   Not only are his opinions supported by medical evidence, they are also unrebutted by any other opinion evidence in the record.

In her report, Dr. Kado referenced radiographic studies but did not identify the studies she relied upon and conducted no diagnostic testing of her own other than a

---

[70]     *Loza v. Apfel*, 219 F.3d at 393.

single examination of Ms. Wimberly on March 20, 2010.  Dr. Wilson similarly performed no diagnostic testing other than a single physical examination.  He referenced x-rays of Ms. Wimberly's hips and knees but apparently reviewed no x-rays, MRIs, or other studies of her back.  Neither Dr. Kado nor Dr. Wilson provided medical evidence that rebutted the medical evidence supporting Dr. Staire's opinions.

Dr. Staires based his opinions on an MRI from 2008 that showed multilevel spondylosis, herniated nuclear pulposis at L3-4 and L4-4, degenerative disc disease at L5-S1, and multilateral foraminal stenosis.[71]  He formulated his opinions concerning Ms. Wimberly's back pain with reference to this testing.  His opinions are also informed by the 2008 x-rays of Ms. Wimberly's hips and knees that are obliquely mentioned by Dr. Kado and Dr. Wilson.  Perhaps most important, Dr. Staires's opinions and recommendations are based on his having provided regular care and treatment to Ms. Wimberly over a more than ten-year period of time.

The ALJ did not explain why he chose not to rely on Dr. Staires's opinions. Therefore, the undersigned finds that the ALJ erred.  Furthermore, the undersigned finds that the ALJ erred in failing to give Dr. Staires's opinions and recommendations controlling weight.  Although the ALJ's disability determination is not governed by Dr. Staires's opinion that Ms. Wimberly is disabled, it is governed by the results of

---

[71]     Rec. Doc. 7-1 at 287.

Dr. Staires's diagnostic testing, the results of his physical examination of his patient, and his opinions concerning her physical capabilities.  Accordingly, the undersigned finds that the ALJ failed to apply the proper legal standard when evaluating Ms. Wimberly's disability status.  Therefore, the undersigned recommends that this matter be reversed and remanded for further consideration in light of this holding, giving Dr. Staires's opinions governing weight.

### (2)   THE ALJ FAILED TO PROPERLY EVALUATE THE CLAIMANT'S CREDIBILITY

The ALJ found that the claimant's allegations were not supported by the evidence of record and, consequently, were not fully credible.  To support that finding, the ALJ stated that "[t]he claimant has not generally received the type of medical treatment one would expect for a totally disabled individual" because she did not seek medical care through Louisiana's charity hospital system.  The ALJ also found her not credible because there was an inconsistency between her statement that she has no side effects from her medication while Dr. Staires suggested that her medications interfere with her ability to function cognitively and because she stated that she uses a cane even though the record does not contain a doctor's statement that she requires a cane to ambulate.

The undersigned finds that each of these reasons cited by the ALJ for finding Ms. Wimberly not credible lacks merit.  First, Ms. Wimberly has no health insurance and, for that reason, stopped receiving epidural steroid injections from Dr. Staires for pain.  The ALJ assumed, without any evidence whatsoever, that these could be obtained from Louisiana's charity hospital system.  Furthermore, a claimant cannot be faulted for not receiving a treatment she cannot afford.[72]  This reason for finding Ms. Wimberly not credible lacks merit.

Second, Dr. Staires stated that, in his opinion, Ms. Wimberly's medications interfere with her ability to function cognitively, while Ms. Wimberly denied any side effects from the medications and specifically stated at the hearing that she does not correlate her loss of concentration with her medications.  Despite her training as an LPN, Ms. Wimberly is not a doctor and therefore is not qualified to evaluate all potential side effects of the medications prescribed to her.  The record does not indicate whether Dr. Staires ever discussed this opinion with Ms. Wimberly.  Furthermore, an opinion is neither true nor false.  Therefore, Ms. Wimberly's failure to connect her lack of attention and concentration – which she has complained about – to the medications she is taking should not be held against her in evaluating her credibility.  This reason for finding Ms. Wimberly not credible lacks merit.

---

[72]      SSR 82-59 (1982 WL 31384).

Third, there is evidence in the record that Ms. Wimberly frequently falls.  She testified at the hearing that she uses a cane as a steadying device to help prevent falls.  She did not testify that she needs a cane in order to walk.  Therefore, Dr. Kado's statement that Ms. Wimberly does not require an assistive device for ambulation is not inconsistent with Ms. Wimberly's testimony regarding her use of a cane.

The undersigned finds that the reasons cited by the ALJ to support his finding that she lacks credibility are meritless.  Therefore, the ALJ erred in finding Ms. Wimberly not credible.  Accordingly, the undersigned recommends that this matter be reversed and remanded for further consideration.

### (3)   THE ALJ RELIED UPON FLAWED TESTIMONY FROM THE VOCATIONAL EXPERT

At step five of the requisite analysis, the ALJ found that there are jobs, existing in significant numbers in the national economy, that Ms. Wimberly is capable of performing.  This finding was based on testimony elicited at the hearing from a vocational expert.

At the hearing, the ALJ asked the expert about available jobs based on the assumption that Ms. Wimberly has the ability to sit for eight hours, to stand for four hours, and to walk for four hours, which the expert explained would mean medium

-20-

work.[73]   The ALJ took "administrative notice of the fact that if sitting were possible for no more than two [hours], standing or walking for more than two [hours] total that would represent less than full time employment."[74]   In fact, Dr. Staires recommended such restrictions.   Still, the ALJ asked the vocational expert for available jobs in the light work category, and the expert found three such jobs available in significant numbers in the national economy.   Thus, the ALJ's step five finding that Ms. Wimberly could perform jobs existing in significant numbers in the national economy was based on a flawed analysis.

In eliciting this opinion from the vocational expert, the ALJ discounted both Dr. Staires's opinion and also Dr. Wilson's opinion.   The full range of light work requires the ability to stand or walk, off and on, for a total of approximately six hours in an eight-hour work day.[75]   In Dr. Wilson's opinion, Ms. Wimberly was capable of sitting for eight hours, capable of standing for four hours, and capable of walking for four hours, which the vocational expert said fits the definition of medium work.   Dr. Staires opined, however, that Ms. Wimberly could not sit for prolonged periods of time and, out of an eight hour workday, could sit for only two hours and stand or walk

---

[73]     Rec. Doc. 7-1 at 45-46.

[74]     Rec. Doc. 7-1 at 46.

[75]     SSR 83-10 (1983 WL 31251).

-21-

for only two hours, precluding full time employment, as the ALJ noted.  The ALJ substituted his own evaluation for that of both doctors, finding that Ms. Wimberly was capable of the full range of light work.  Thus, the residual functional capacity finding used by the ALJ when questioning the expert at step five is not supported by the evidence of record and is contrary to the principle that an ALJ must not "play doctor" and make his own independent medical assessments.[76]

Because the ALJ's residual functional capacity finding is not supported by evidence in the record, and the step five finding was based on a residual functional capacity finding that is not supported by evidence in the record, both the Commissioner's residual functional capacity finding and his finding at step five are erroneous.  More precisely with regard to Ms. Wimberly's third assignment of error, the undersigned finds that the Commissioner did not meet his burden of proving that there are jobs in the national economy, in significant numbers, that Ms. Wimberly is capable of performing.  Accordingly, the undersigned therefore recommends that this matter be reversed and remanded for reevaluation of Ms. Wimberly's residual functional capacity and reevaluation of the step five criteria.

## CONCLUSION AND RECOMMENDATION

For the reasons explained above,

---

[76]    *Frank v. Barnhart*, 325 F.3d 618, 622 (5th Cir. 2003).

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be REVERSED and REMANDED for further consideration in accordance with the foregoing discussion.  In particular, the Commissioner should give her treating physician's opinions controlling weight, thoroughly evaluate Ms. Wimberly's residual functional capacity, and determine whether there are jobs existing in significant numbers in the national economy that she is capable of performing.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds

of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d
1415 (5th Cir. 1996).

 Signed at Lafayette, Louisiana, this 22nd day of July 2013.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

-24-